

**SO ORDERED.**

**SIGNED this 18 day of March, 2009.**

_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for print publication and on-line use
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>TERRY G. ANDERSON and<br>BRENDA M. ANDERSON,<br><br>        DEBTORS. | CASE NO. 07-11656<br>CHAPTER 7 |
| NATHAN GUINN,<br><br>        PLAINTIFF,<br><br>v.<br><br>TERRY G. ANDERSON,<br><br>        DEFENDANT. | ADV. NO. 07-5338 |

**MEMORANDUM OPINION AND ORDER FINDING DEBT
NONDISCHARGEABLE IN PART**

This case is a dischargeability adversary proceeding under 11 U.S.C. §§ 523(a)(2)(A),

(a)(4), and (a)(6), seeking to except from discharge an unpaid judgment entered by the District

Court of Kearny County, Kansas, Case No. 2005 CV 10, in favor of Plaintiff Nathan Guinn against Debtor Terry G. Anderson. The matter was taken under advisement following trial held on January 9, 2009, at which Plaintiff appeared by J. Scott Koksal and Defendant appeared in person and by counsel Paul W. Joslin. The Court is now ready to rule, and for the reason stated below finds the judgement nondischargeable in part under § 523(a)(2)(A) and (a)(4). The Court has jurisdiction.[1]

**TESTIMONY.**

On December 23, 2003, Plaintiff Guinn was arrested for theft in Finney County, and his bail was set at $10,000. Guinn contacted Anderson, who, as attorney-in-fact for American Surety Company, provided an appearance bond. The claim of nondischargeablility arises out of the undisputed fact that Plaintiff Guinn paid Defendant Anderson, a licensed bail bondsman, between $8,000 and $9000 in excess of the premium for the $10,000 bail bond. Plaintiff and Defendant have vastly different versions of the facts which gave rise to the excess payment.

Plaintiff Guinn, because he was incarcerated out of state, was unavailable for trial but testified as follows by deposition. On February 23, 2003, both Plaintiff Guinn and his brother were arrested in Finney County. Plaintiff's bond was set at $10,000 and his brother's at $1,000. Guinn, who had not previously obtained an appearance bond, found Anderson's name on a clip board inside the jail and phoned him. According to Guinn, Anderson: (1) Said he would provide

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

the bonds for $10,000, without a breakdown of costs other than there would be a $100 fee for Guinn's brother's bond; (2) did not tell Guinn that he could have posted $10,000 cash in lieu of a surety bond; (3) told Guinn he needed $10,000 to make sure that Guinn "didn't run from the courts;" and (4) represented that he would return all of the $10,000 except the $100 fee for his brother's bond, when Guinn's case was over. Guinn testified on cross examination as follows:

> Q. And you understood it was -- it was going to cost you $10,000 to get out of jail; is that correct?
> A. Yes.
> Q. And he [Anderson] didn't -- he did not indicate that he only needed a portion of that money to bail you out?
> A. No, he didn't.
> Q. He -- as you previously testified you said he needed the whole 10,000 to do it; is that correct?
> A. Yes.

Guinn withdrew approximately $10,000[2] cash from his bank account, Anderson was given the full amount of the withdrawal, and appearance bonds were provided.

Anderson testified in person as follows. He had been in the bonding business for about 3 to 4 months when Guinn called. The cost of a $10,000 appearance bond is 10% of the bond amount, plus a $75 fee, which in this case was $1,075.[3] Anderson's version of the circumstances surrounding the payment of approximately $10,000 is significantly different from that of Guinn. According to Anderson, the money in excess of the bond premium paid to Anderson by Guinn

---

[2] Anderson testified that the amount withdrawn was slightly less than $10,000, but did not recall the precise amount. The Court will use $10,000, since the precise amount is not material to the issues before the Court.

[3] Guinn testified that he paid $100 for his brother's bond.

3

was an "inducement" or gift offered by Guinn,[4] which Anderson accepted, without making an agreement to return any of the payment. Mr. Anderson testified as follows:

> . . . When I visited with him [Mr. Guinn] the morning of the 23rd, there was nobody available to co-sign [a cash bond], and he continuously called me throughout the day. By the end of the day when I was up there writing another bail bond, he asked if I would come talk to him again. At that time when I was sitting there with him, he told me he had money in a bank in Scott City. He then told me, he said I will give you all of the money if you will get me out of jail today. You can keep all that money if you will just get me out of jail today, so I can be with my pregnant wife for Christmas.
>
> Q. He made you an offer?
> A. Yes, sir, he did.
> Q. Okay. Did you accept that offer?
> A. Yes, sir, I did.

It is Anderson's contention that although he told Guinn that he could post a $10,000 cash bond with the assistance of someone other than Anderson and that the money, less costs, would be returned if he appeared, Guinn nevertheless turned over the $10,000 to Anderson as a gift.

After Guinn's last court appearance, he called Anderson and requested return of the excess payment. Guinn contends that Anderson told him he would need another day to check with the court. Thereafter, Anderson did not return the money and, according to Guinn, Anderson told Quinn that Anderson's wife had spent it on credit cards and bills. Anderson's version is different. Anderson testified that he told Guinn that he had given the money to Anderson as a gift "and we signed paper work according to do that." Anderson then called a

---

[4] In a motion for summary judgment, which was treated as a trial brief (doc. 30), Anderson contended that the excess payment was a "bribe." At the close of the trial, Anderson's counsel moved to conform the pleadings to the evidence, so the Court shall disregard this position which is contrary to the evidence.

4

representative of the bonding company who, according to Anderson, "said you should be okay," since he represented he had a signed receipt. When Anderson couldn't find the receipt, he called Guinn but denies that the told him that his wife had spent the money. Anderson testified that he told Guinn that he did not have sufficient cash to make the payment since the extra payment had been used for salaries and business expenses and suggested the parties meet so he could sign a promissory note. According to Anderson, until inquiry following Guinn's request for payment, Anderson thought he had a right to take the excess payment.

Anderson agreed to restore the excess payment to Guinn through periodic payments, but eventually stopped making payments. In March 2004, Anderson executed and delivered to Guinn a promissory note for payment of $8400, with interest at 7% per year, and providing for the payment of attorney fees and costs of collection. Anderson defaulted. On June 2, 2005, Guinn sued Anderson on the note in Kearny County District Court. A Journal Entry granted Guinn judgment against Anderson for $7,116, comprised of $5,800 principal, $330 interest, plus interest from the date of judgment until paid, $870 in attorney fees, and $116 for costs. Anderson testified that he had no notice that the judgment would be entered against him because his attorney did not keep him informed of the lawsuit, but he has never sought to have the judgment set aside.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

 **A. Exceptions from Discharge in General.**

Guinn seeks to except from discharge the amount due him from Anderson on the Kearney County judgment. If Anderson's debt to Guinn was nondischargeable when it arose, the execution of the promissory note, which did not include a release from any claims, such as fraud

5

or embezzlement, and was the basis for the judgment, did not make Anderson's dishonest debt honest. Under these circumstances, there are two separate and distinct causes of action: One is on the debt and the other is on dischargeability of that debt.[5] The debt which is the subject of the note and judgment can amount to a debt for money obtained by fraud under the dischargeability statute.[6] The Court's focus is therefore upon the circumstances which lead to the creation of the debt owed by Anderson to Guinn for return of the amount paid in excess of the true cost of the bonds.

"The discharge provisions of § 523 will be strictly construed against the creditor and liberally construed in favor of the debtor."[7] The Creditor has the burden of proof on all elements by a preponderance of the evidence.[8] Often credibility based upon the court's observation of witness demeanor plays a significant role in determining dischargeability. However, in this case, the fact that Plaintiff Guinn was required to testify by deposition and Defendant Anderson testified in person presents the Court with difficulties when ascertaining their credibility. The Court has therefore evaluated the conflicting testimony based upon its content and consistency with all the circumstances rather than based upon evaluation of witness demeanor or general credibility.

---

[5] *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir. 1994), *citing Brockenbrough v. Taylor (In re Taylor)*, 54 B.R. 515, 517-18 (Bankr. E.D. Va. 1985).

[6] *Archer v. Warner*, 538 U.S. 314 (2003).

[7] *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000) *aff'd in part, vacated in part on other grounds*, 35 Fed. Appx. 826 (10th Cir. 2002).

[8] *Grogan v. Garner*, 498 U.S. 279 (1991).

6

### B. Exception from Discharge under § 523(a)(2)(A).

Guinn first alleges that his claim against Anderson should be excepted from discharge under § 523(a)(2)(A), money or property to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Establishing an exception to discharge based upon misrepresentation is often stated to require the following elements: (1) The debtor made a representation; (2) at the time of the representation, the debtor knew it to be false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained the alleged loss and damage as a proximate result of the representation having been made.[9] The frauds included within misrepresentations sufficient to deny discharge must "involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient."[10] Fraudulent intent need not be shown by direct evidence and may be inferred from the circumstances. "The bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor.'"[11]

---

[9] *See e.g. Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (stating five elements but requiring that creditor's reliance be reasonable); *Field v. Mans*, 516 U.S. 59 (1995) (holding that creditor reliance must be justifiable); *In re Davis*, 246 B.R. at 652.

[10] 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2008).

[11] *In re Davis*, 246 B.R. at 652, *quoting* 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d 47:16, n. 62 (1999).

7

The Court finds that Guinn has sustained his burden of proof under this subsection. As to the first element, Guinn testified by deposition that Anderson represented that it would cost him the full $10,000 to get out of jail, that he needed $10,000 to make sure that Guinn "didn't run from the courts." Anderson denied Guinn's statement. Anderson testified that Guinn offered the payment in excess of the bond premiums and fees as an inducement or gift for getting Guinn and his brother out of jail. The Court finds Anderson's assertion not worthy of belief. There is no evidence that Guinn understood that he was making a gift to Anderson. Guinn testified that Anderson represented that he would return the excess payment. Guinn would not have asked for the return of the excess money if he believed he had made a gift. The testimony of Guinn rather than Anderson is consistent with the circumstances of the transaction. That Anderson represented that payment of the full amount was required is supported by Anderson's denial that he represented to Guinn that he would refund the charges in excess of the bond costs after the criminal case was concluded. Further, Anderson did not testify that the excess payment was requested as collateral or for any other legitimate purpose. The Court finds that Anderson made the representation that he needed the full $10,000 to post the appearance bonds, as alleged by Guinn and rejects Anderson's contention that Guinn gave Anderson the excess funds as a gift or inducement.

As to the second element, the Court finds that Anderson knew the representation that he needed the full $10,000 payment was false when made. As a bail bondsman, Anderson knew the cost of the bonds.

8

As to the third element, the Court finds intent to deceive. Because intent to deceive is rarely admitted, it "must be inferred by the totality of the circumstances of the case at hand."[12] Those circumstances include not only the conduct at the time of the representation, but also subsequent conduct which provides an indication of debtor's state of mind at the time of the representation.[13] In this case, intent to deceive is evidenced by several factors. First, neither Anderson nor Guinn testified that Quinn was informed of the true costs of the bonds. Second, Anderson did not testify that he requested the excess payment as collateral in the event the bond was forfeited. Third, Anderson's testimony that the excess payment was a gift or inducement offered by Guinn is so incredible that the Court finds it to be an after the fact rationale to hide his intent to deceive. Fourth, Anderson's denial that he told Guinn he would return the excess evidences that Anderson intended to acquire the excess funds for his own use and not to return the money. Fifth, Anderson's assertion, if true, that he did not know it was improper to take money in excess of the premium and fees until he inquired following Guinn's request for return of the funds, does not refute the allegation that he obtained the funds by deceit. The intent to deceive element of nondischargeability under § 524(a)(2)(A) is not concerned with knowledge of the legal duties of the debtor; it focuses upon whether the debtor was deceptive in his dealings with the creditor.

As to the fourth element, there is no question that Guinn justifiably relied upon Anderson's representation that he needed the full $10,000. From Guinn's perspective, Anderson was in a position of power. Anderson was a bail bondsman, and Guinn was incarcerated.

---

[12] *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998).

[13] *In re Davis*, 246 B.R. at 652.

9

Anderson was the only person Guinn contacted for procuring his and his brother's release. Guinn had no prior experience in being released after posting an appearance bond. There is no evidence that he knew the cost of an appearance bond or even that a cash bond could have been posted without the assistance of a bail bondsman. Further, Guinn understood that the funds not needed to purchase the bonds would be returned if the bonds were not forfeited. Under the circumstances of Guinn's incarceration and Anderson's business of a bail bondsman, Guinn's reliance on Anderson and payment of the full amount to Anderson was justifiable.

Finally, the record is clear that Guinn was damaged by his justifiable reliance on Anderson's misrepresentation. Five thousand eight hundred dollars of the overpayment has not been paid by Anderson to Guinn.

For the foregoing reasons, the Court finds that the judgment is excepted from discharge under § 523(a)(2)(A). Anderson falsely represented to Guinn that he needed the full $10,000 to get Guinn and his brother out of jail; Anderson knew the representation was false when made; Anderson made the representation with intent to deceive Guinn so he could acquire excess funds for his own use; Guinn justifiably relied upon the representation; and Guinn suffered a loss.

**C. Exception from Discharge under § 523(a)(4).**

Guinn also asserts his claim is nondischargeable under § 524(a)(4), fraud while acting in a fiduciary capacity, embezzlement, or larceny. The Court finds the fiduciary capacity portion of § 524(a)(4) is inapplicable in this case. The fiduciary capacity exception applies only where a technical or express trust is recognized under state law.[14] "An express or technical trust may be created by an agreement that contains: (1) an explicit declaration by the parties of an intent to

---

[14] *McCreary v. Kichler (In re Kichler)*, 226 B.R. 910, 913 (Bankr. D. Kan. 1998).

create a trust; (2) specific and definite property or subject matter of the trust; and (3) acceptance of the duties by the trustee."[15] The standard is strict, and a fiduciary relationship will not be implied. Generally, the exception from discharge does not apply to frauds of agents, bailees, brokers, and partners.[16]

Guinn has presented no evidence of an agreement with Anderson that could constitute a trust relationship. Guinn has not cited and the Court has not found any statutes creating a fiduciary relationship or cases holding there is a fiduciary relationship between a bondsman and his principal. On the other hand, it has been held that the relationship between a bail bondsman and the commercial surety company he represents is based upon contract, and fraud of the bondsman relating to failure to indemnify the bonding company upon a bond forfeiture is not excepted from discharge under § 524(a)(4).[17] Likewise a bail bondsman's debt to the state for forfeiture amounts is not excepted from discharge.[18] In face of this authority, the absence of any case law finding a fiduciary relationship between bondsman and principal, and the absence of a Kansas statute declaring such a relationship, the Court finds there was not a fiduciary relationship between Guinn and Anderson.

However, Guinn has established the elements for exception from discharge under the embezzlement portion of § 524(a)(4). "Embezzlement, for purposes of this section, is the 'fraudulent appropriation of property of another by person to whom such property has been

---

[15] *Id.*

[16] 4 *Collier on Bankruptcy* ¶ 523.10[1][d].

[17] *Pioneer Gen'l Ins. Co. v. Midkiff (In re Midiff)*, 86 B.R. 239, 241 (Bankr. D. Colo. 1988).

[18] *Hickman v. Texas (In re Hickman),* 260 F.3d 400 (5th Cir. 2001).

11

entrusted or into whose hands it has lawfully come.'"[19] It has been said that the elements of embezzlement are: "(1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation of reason or purpose."[20] "Fraudulent appropriation requires 'fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.'"[21]

In this case, the Court finds the evidence supports a finding of embezzlement. It is clear that the excess payment came into Anderson's hands with the consent of Guinn. It is equally clear, as examined above, that Anderson obtained the funds in excess of the cost of the appearance bonds for his own benefit by deceit. After payment by Guinn to Anderson, the funds were not available to Guinn. Without explanation to Guinn, Anderson used the funds for his own benefit.

The Kansas Supreme Court in somewhat similar circumstances found an insurance agent's multiple fraudulent overcharges of premiums for health and accident insurance to be criminal acts of obtaining money under false pretenses.[22] Defendant Aiken, while acting as a representative of American Insurance Company, on five occasions misrepresented the premiums on health and accident insurance, by, for example, charging an annual premium of $68.50, when

---

[19] *Belfry v. Cardozo (In re Belfry)*, 862 F. 2d 661, 662 (8th Cir. 1988), *quoting In re Schultz*, 46 B.R. 880, 889 (Bankr. D. Nev. 1985).

[20] 4 *Collier on Banlruptcy* ¶ 523.10[2].

[21] *In re Kichler*, 226 B.R. at 914, quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 507(10th Cir. 1986).

[22] *State v. Aiken*, 174 Kan. 162, 254 P.2d 264 (1953).

12

the true premium was $33.00. On appeal from his conviction, Aiken contended that misrepresentation of price was not an element of obtaining money by false pretenses. The Supreme Court rejected this argument finding that "a false representation made with intent to cheat and defraud another by which money is obtained is a false pretense"[23] for purpose of the criminal offense.

In this case, the Court finds that Anderson embezzled the excess payment he received from Guinn, and Guinn's claim is excepted from discharge under § 523(a)(4).

### D. Exception from Discharge under § 523(a)(6).

The Court finds that the debt is not excepted from discharge under § 524(a)(6), willful and malicious injury to property of another. That subsection provides a claim "for willful and malicious injury by the debtor to another entity or to the property of another entity" shall be excepted from discharge. Although fraud as a basis for nondischargeability is specifically addressed by § 523(a)(2) and not by § 523(a)(6), the same fraudulent conduct may give rise to a nondischargeability claim under both subsections.[24] However, without proof of both a willful act and malicious injury the objection to discharge under this subsection fails.[25] The exception covers "only acts done with the actual intent to cause injury."[26] In order to constitute a willful act, the debtor must intend to cause the consequences of his act or believe that the consequences

---

[23] *Id,* 174 Kan. at 165.

[24] *Ferris v. Stokes (In re Stokes)*, 995 F.2d 76 (5th Cir. 1993).

[25] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

[26] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

13

are substantially certain to follow.[27] The malicious element requires proof that "the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury."[28] "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[29] The exception generally applies to tort damages resulting from intentional torts, such as assault and battery or intentional infliction of emotional distress.

Therefore, as to the § 523(a)(6) claim, the question is whether Anderson's conduct was willful and malicious. The Court finds that Guinn has failed to establish these elements. There is not sufficient evidence that Anderson acted with intent to cause harm to Guinn. Rather, the evidence leads the Court to conclude that Anderson engaged in deliberate or intentional *acts* which lead to injury but the injury was not deliberate and intentional. Anderson acted deceitfully to benefit himself, but not with malice.

### E. Amount Excepted from Discharge.

Next the Court must determine whether only the unpaid amount owed under the note, the $5,800 outstanding on the obligation to return the excess payment, or the entire judgment, including interest, attorney fees and costs, shall be excepted from discharge. The Court observes that § 523(a)(2)(A) excepts from discharge any debt for money to the extent obtained by fraud and § 523(a)(4) excepts from discharge any debt for embezzlement. As applied to this case, both of these subsections limit the exception from discharge to the amount of the excess payment not

---

[27] *In re Moore,* 357 F.3d at 1129, *citing Mitsubishi Motors Credit of Amer., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999).

[28] *Id., quoting Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995).

[29] *Kawaauhau v. Geiger*, 523 U.S. at 61.

14

already returned; the amount excepted from discharge is the amount owed obtained by fraud or the amount embezzled. There is no allegation that the promissory note, which was the subject of the judgment and which provided for interest, fees, and expenses, was colored by fraud. The Court therefore holds that Guinn's claim is excepted from discharge to the extent of $5,800, the amount outstanding on Anderson's agreement with Guinn to return the excess payment.

**CONCLUSION.**

The Court holds $5,800 of the judgment, the amount owed by Anderson to Guinn pursuant to the note under which Anderson promised to return the excess payment for the bonds to Guinn, is nondischargeable under § 523(a)(2)(A) and § 523(a)(4). The interest, attorney fees, and court costs included in the judgment are not excepted from discharge.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###